UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARIANA MARINI | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY | : | |
| *Defendant* | : | |

## COMPLAINT

Now comes the Plaintiff in the above entitled matter and complains as follows:

### Nature of Action

1. This is an action seeking an award to Plaintiff of long-term disability ("LTD") benefits under the group long-term disability plan (the "Plan") established by Bank of America which is administered and insured by Metropolitan Life Insurance Company ("MetLife").

2. Plaintiff seeks recovery of benefits pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

3. At all relevant times, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and as a result of her employment, Plaintiff was qualified under the Plan as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Plan.

### Parties

4. Plaintiff, Mariana Marini, is and was at all relevant times a resident of the State of Rhode Island.

5. Defendant, Metropolitan Life Insurance Company, upon information and belief, was at all relevant times an insurance company registered to do business in Rhode Island and

having a usual place of business located at 18210 Crane Nest Drive, 3rd Floor, Tampa, FL 33647.

## Jurisdiction and Venue

6. At all relevant times, Defendant had sufficient minimum contacts within the State of Rhode Island to satisfy the requirements for personal jurisdiction pursuant to Rhode Island's Long Arm Statute.

7. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA), and in particular 29 U.S.C. §1132(e)(1) and §1132(f). In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

8. ERISA provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials. The administrative appeal process has been exhausted, is satisfied, and this dispute is ripe for suit.

9. Venue is proper in this Court because Plaintiff is a resident of the State of Rhode Island, and Defendant is subject to this Court's personal jurisdiction with respect to this action. 28 U.S.C. §1391(c)(2).

10. MetLife is an insurance company which has, at all times relevant hereto, done business within this district.

## Statements of Fact

11. Under the Plan, Ms. Marini is entitled to LTD benefits if she meets the following definition of disability:

> Due to Sickness or as a direct result of accidental injury:
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment unless, in the opinion of a

2

Physician, future or continued treatment would be of no benefit; and
- You are unable to earn in the first 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
- After such period, more than 60% of Your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

12.    Ms. Marini is disabled due to neurogenic pain, migraines, depression, anxiety, and posttraumatic stress disorder ("PTSD").

13.    Prior to her disability, Ms. Marini worked as a client services representative for Bank of America.

14.    As a client services representative, Ms. Marini was responsible for, among other things, coordinating unit's relationship management activities, preparing and conducting client presentations, handling general service problems, and consulting with senior staff for guidance and resolution on more complex issues and overall relationship management.

15.    The duties of Ms. Marini's own occupation included, but were not limited to, "phone and computer work, ability to express thoughts clearly, troubleshooting, and concentration to process information."

## Ms. Marini Underwent a C-Section

16.    On or about September 19, 2017, Ms. Marini underwent a c-section to deliver her son.

17.    Following her c-section, Ms. Marini began to experience intermittent pain at her incision site.

18.    On or about March 7, 2018, Ms. Marini reported to her OB/GYN that her pain was persistent and that she was now suffering numbness over the incision.

3

19.     Ms. Marini's OB/GYN became concerned that Ms. Marini had developed nerve
        entrapment syndrome and referred her to a pain specialist.

20.     Ms. Marini underwent several nerve block injections, as well as physical therapy, but was
        unable to obtain pain relief.

21.     On or about June 27, 2018, Ms. Marini reported to her OB/GYN that the injections had
        not helped, that she "continues to have originating pain from the right side of her incision
        and it shoots down her thigh," and that "it is affecting her life."

**MetLife found Ms. Marini disabled from her Own Occupation and approved STD benefits**

22.     Ms. Marini became totally disabled under the terms of the Plan on or about June 29,
        2018.

23.     Ms. Marini filed a claim for short-term disability ("STD") benefits due to her nerve pain.

24.     Bank of America's STD plan was self-funded and administered by MetLife.

25.     Ms. Marini was disabled and entitled to benefits under the STD plan if she was unable to
        perform the essential functions of her occupation.

26.     MetLife investigated and determined that Ms. Marini was disabled under the terms of the
        STD plan.

27.     In August of 2018, Ms. Marini consulted with a surgeon regarding her nerve pain but was
        advised that surgery was unlikely to be beneficial, given that injections did not resolve
        her pain.  Ms. Marini was referred back to pain management.

28.     Ms. Marini subsequently developed anxiety and depression as a result of her nerve pain
        and inability to properly care for her son due to her pain.

29.     In August of 2018, Ms. Marini began treating with psychiatric clinical nurse specialist
        Laura Chalk.

30.   MetLife determined that Ms. Marini was disabled under the terms of the STD plan, and

Bank of America paid STD benefits, from on or about June 30, 2018 until on or about

December 28, 2018, the maximum STD benefit period.

**MetLife wrongly denied Ms. Marini's LTD claim**

31.   MetLife also reviewed Ms. Marini's file for LTD benefits.

32.   Bank of America's LTD plan was both administered and insured by MetLife.

Accordingly, MetLife was a conflicted LTD plan administrator.

33.   Between November 13, 2018 and November 26, 2018, Ms. Marini was admitted to Butler

Hospital's partial hospitalization program.

34.   On or about December 14, 2018, Ms. Marini underwent a peripheral nerve block in the

transversus abdominis plane (a "TAP" block).

35.   Between January 17, 2019 and February 22, 2019, Ms. Marini was admitted to Rhode

Island Hospital's partial hospitalization program.

36.   Following Ms. Marini's partial hospitalization, each week she engaged in therapy with

Ms. Chalk, trauma exposure therapy with Darren Holowka, Ph.D., and group therapy.

37.   Following Ms. Marini's partial hospitalization, she worked with her primary care

physician to obtain a referral to a pain specialist.

38.   Following Ms. Marini's partial hospitalization, she began taking gabapentin to treat her

chronic pain.

39.   On or about April 30, 2019, Ms. Chalk wrote a letter explaining Ms. Marini's medical

status.  Ms. Chalk wrote:

> [Mariana] was experiencing unrelenting neuralgia in the area of her
> cesarean section incision.  She had gone to see many doctors to try and
> figure out and treat this pain without success and it was wearing her down.
> This pain left her feeling hopeless and inadequate.  She was unable to lift

or play with her son due to the pain and could not be the mother that she wanted to be.

. . .

She was admitted to Butler Hospital's Integrative Therapies Track from 11/12/18 to 11/26/18 to target her depression and high level of anxiety. During this period memories of her trauma [(witnessing and surviving an earthquake disaster as a young child)] resurfaced in a potent way and it became clear that her trauma history was driving her symptoms.  Mariana endorsed crippling anxiety with daily panic, flashbacks and dissociative episodes, irritability, hyperarousal and hypervigilance, fear of harm coming to her son and obsessive checking for safety. At times she felt angry . . . She felt sad and hopeless at times, crying daily, with decreased pleasure in the things that she used to enjoy, guilt, shame as well as insomnia and thoughts that she wished that she didn't have to go through this life, that her son would be better off without her.  She felt as though she was a bad mother and wasn't providing her son with the mothering that he deserved.

40.   In her April 30, 2019 letter, Ms. Chalk further explained that Ms. Marini "struggles daily with incapacitating pain from her cesarean section and worries that there will be no resolution" and that Ms. Marini "is significantly compromised by her current mental health status.  She is struggling to stay afloat."

41.   On or about May 1, 2019, Ms. Marini's group therapist, Sarah Zimage, LMHC, wrote a letter explaining Ms. Marin's medical status.  Ms. Zimage wrote:

In group, Ms. Marini has reported clinically significant symptoms of PTSD, and has discussed how these symptoms have interfered with activities of daily living such as self-care, caring for her family including her elderly parents and child, and caring for her household.

42.   On or about May 3, 2019, MetLife denied Ms. Marini's claim for LTD benefits, concluding that the medical evidence did not support Ms. Marini's disability from her Own Occupation beyond December 16, 2018, and therefore she failed to meet the LTD Plan's elimination period.

6

43.   MetLife's decision to deny LTD benefits was against the clear weight of the evidence.

44.   MetLife's decision to deny LTD benefits because Ms. Marini was not disabled beyond December 16, 2018 was contradicted by its determination that Ms. Marini was disabled and entitled to STD benefits until December 28, 2018, the maximum STD benefit period.

45.   Upon information and belief, MetLife's contradictory positions on Ms. Marini's STD and LTD claims was due to MetLife's status as a conflicted LTD plan administrator and the fact that MetLife was responsible for paying LTD benefits, but not STD benefits.

46.   On or about May 14, 2019, Dr. Holowka wrote a letter explaining Ms. Marini's medical status.  He wrote:

> Notwithstanding her progress in therapy so far, [Ms. Marini] continues to struggle with various PTSD symptoms, including repeated, disturbing, and unwanted memories and nightmares of the [earthquake] events.  She also experiences feeling very upset and strong physical reactions when something reminds her of the events.  As a result, she avoids people, places, situations and conversations, as well as thoughts and feelings, including dissociative episodes.  She struggles with feelings of guilt and self-blame, and has experienced cognitive changes including strong negative beliefs about herself, other people and the world, persistent strong negative feelings, feeling constantly on guard and jumpy, as well as difficulty concentrating and sleeping.

**Ms. Marini appealed MetLife's wrongful denial of benefits**

47.   On or about October 11, 2019, Ms. Chalk wrote another report, explaining Ms. Marini's medical and disability status.  She opined:

> I do not believe that Mariana Marini would be able to fulfill her role as a customer service representative at the Bank of America or any other job at this time.  Her pain, anxiety, PTSD & depression significantly impact her ability to focus & interact with clients & peers; attend work regularly due to lack of sleep & physical pain or keep up with the pace and demands of a full or even part-time position.

48.    By letter dated October 15, 2019, Ms. Marini timely appealed MetLife's denial of her

        LTD benefits.

49.    On or about November 27, 2019, MetLife referred Ms. Marini's file for a pain

        management peer review and a psychiatry peer review through its vendor, Genex.

50.    On or about December 6, 2019, Ms. Marini's file was reviewed by MetLife's

        anesthesiology and pain medicine consultant, William Baumgartl, M.D.

51.    On or about December 6, 2019, Ms. Marini's file was reviewed by MetLife's psychiatry

        consultant, Brandon Erdos, M.D.

52.    Dr. Baumgartl and Dr. Erdos' file review opinions contained an identical "File

        History/Summary."

53.    Upon information and belief, the File History/Summary was materially incomplete and

        presented an inaccurate accounting of Ms. Marini's medical situation.

54.    Upon information and belief, neither Dr. Baumgartl nor Dr. Erdos actually reviewed Ms.

        Marini's medical records themselves when rendering their opinions, but rather relied on

        the materially incomplete "File History/Summary."

55.    Against the clear weight of the evidence, Dr. Baumgartl concluded that Ms. Marini did

        not have any physical restrictions or limitations for the time period of June 30, 2018 to

        present.

56.    Upon information and belief, Dr. Baumgartl cherry-picked evidence and arbitrarily

        minimized and/or ignored evidence that supported Ms. Marini's claim.

57.    Against the clear weight of the evidence, Dr. Erdos concluded that Ms. Marini only had

        psychiatric impairments between November 13, 2018 and April 18, 2019.

58.    Dr. Erdos concluded:

> During the time frame that impairment is supported from
> 11/13/2018 through 04/18/2019, the claimant's psychiatric
> conditions impair or restrict her ability to sustain work-related
> activities on a full time basis.  For the rest of the time frame in
> question, there is no indication that the claimant's abilities are
> impaired and unable to be sustained on a full-time basis due to a
> psychiatric condition.

59.    Upon information and belief, Dr. Erdos cherry-picked evidence and arbitrarily minimized

and/or ignored evidence that supported Ms. Marini's claim.

60.    Upon information and belief, MetLife failed to provide both Dr. Baumgartl and Dr. Erdos

with a job description for Ms. Marini's Own Occupation as a client services

representative.

61.    Upon information and belief, neither Dr. Baumgartl nor Dr. Erdos considered whether

Ms. Marini was capable of performing her Own Occupation.

62.    On or about December 9, 2019, Ms. Marini received a letter from MetLife, providing a

copy of Dr. Baumgartl and Dr. Erdos' file review opinions.

63.    On or about December 17, 2019, Ms. Chalk wrote a report, rebutting Dr. Erdos' opinion.

64.    In her December 17, 2019 report, Ms. Chalk explained:

> Mariana has been unable to work since June 30, 2018.  Initially,
> Mariana was experiencing unrelenting neuralgia in the area of her
> cesarean section incision.  She has been many doctors to try and
> treat this pain.  Unfortunately, it has been unsuccessful.  This pain
> began to wear Mariana down and left her feeling hopeless,
> inadequate, and unable to lift or play with her son, which further
> contributed to her feelings of inadequacy.  She was referred to me
> by her midwife and I have been treating Mariana since August 22,
> 2018.  At that time, Mariana was experiencing symptoms of
> depression and anxiety including frequent tearfulness, irritability,
> lack of focus, uncontrollable worry, and difficulty sleeping, all of
> which prevented Mariana from even caring for her young son
> without assistance, let alone returning to work.  Her anxiety was so
> out of control, Mariana was admitted to Butler Hospital's partial
> hospitalization program from November 12, 2018 through
> November 26, 2018.  Being at the partial program and discussing

> family dynamics led to the resurfacing of suppressed traumatic memories from her childhood.  Upon her discharge from Butler Hospital she described intrusive memories, flashbacks and dissociation.  PTSD became a primary treatment focus and she was referred to Rhode Island Hospital's partial hospitalization program where she was admitted from January 17, 2019 until February 22, 2019.
>
> Contrary to Dr. Erdos' assessment, Mariana continued to be disabled from depression, anxiety, and post-traumatic stress disorder beyond April 18, 2019.  Despite numerous medication adjustments/additions, as well as weekly trauma group therapy, weekly individual trauma therapy with Darren Holowka, Ph.D., and weekly therapy and psychopharmacology visits with myself, Mariana's symptoms have not improved to a point where she is capable of returning to work in any capacity.

65. On or about December 18, 2019, Ms. Marini wrote to MetLife and explained the errors in Dr. Baumgartl and Dr. Erdos' opinions.

66. On or about January 6, 2020, Dr. Erdos wrote an addendum to his file review opinion.

67. In his January 6, 2020 addendum, Dr. Erdos concluded: "The original determination that impairment is supported, but only for a portion of the time frame in question due to a psychiatric condition, remains unchanged.  The period of impairment supported by the documentation begins 11/13/2018 and ends 04/18/2019."

68. Regarding Ms. Marini's letter explaining the errors in Dr. Baumgartl and Dr. Erdos' opinions, Dr. Erdos wrote: "[The] letter, while detailing medical record summaries and arguments against the original determination do not provide additional medical insights or medical opinions that would change the prior determination."

69. Regarding Ms. Chalk's December 17, 2019 report, Dr. Erdos wrote:

> The letter submitted by Laura Chalk, MSN, PCNS, provides an opinion that supports the claimant as functionally impaired during the entirety of the time frame in question.  ***Ms. Chalk gives documentation to support her opinion***.  However, the documentation when considered with the totality of the medical

> records reviewed does not provide any additional new insights or
> provide new evidence that would substantiate a change to the
> original determination.  (emphasis added).

70.    On or about January 9, 2020, Ms. Chalk wrote a letter in response to Dr. Erdos' January

       6, 2020 addendum.

71.    In her January 9, 2020 letter, Ms. Chalk pointed out the inconsistency between Dr. Erdos'

       statement that Ms. Chalk provided documentation to support her opinion that Ms. Marini

       was continuously functionally impaired since June 30, 2018, and his statement that Ms.

       Chalk's opinion did not change his conclusion that Ms. Marini was only functionally

       impaired between November 13, 2018 and April 18, 2019.

72.    In her January 9, 2020 letter, Ms. Chalk wrote: "Dr. Edros is wrong.  I have been

       evaluating and treating Mariana for a year and a half. During that time, I have observed

       her disabling symptoms of pain, depression, anxiety, and PTSD, as documented in my

       December 17, 2019 report and my weekly therapy notes."

73.    On or about January 21, 2020, Dr. Erdos wrote a second addendum to his file review

       opinion, in which he backtracked to try and justify maintaining his conclusion that Ms.

       Marini was only functionally impaired between November 13, 2018 and April 18, 2019.

       Dr. Erdos wrote:

> it is the writer's acknowledgement that in the prior determination
> the summary of Ms. Chalk's findings ***may have been a poor
> choice of words***.  It was not the intention of this writer in the
> addendum to review to suggest that Ms. Chalk provided evidence
> that supported her opinion that the claimant is continually disabled
> since 06/30/2018.  A more appropriate statement would have been
> to state that Ms. Chalk in her 12/17/2019 report opined the
> claimant has been continuously disabled since 06/30/2018 and
> provided documentation that she opines supports her statement.
> (emphasis added).

**MetLife denied Ms. Marini's appeal**

74.  On February 3, 2020, MetLife denied Ms. Marini's appeal.  In the denial letter, appeals specialist Krista Page wrote: "While we do not discount your client experiences physical and psychiatric symptoms, which supported psychiatric restrictions and limitations for the closed period of November 13, 2018 through April 18, 2019, these restrictions and limitations did not support your client would have been prevented from performing her own occupation, throughout the entire Elimination Period onward."

75.  Upon information and belief, MetLife never addressed the discrepancy between its determination that Ms. Marini was disabled from her own occupation for the entire STD benefit period and its determination that she did not meet the LTD Plan's elimination period.

76.  MetLife's decision to deny Ms. Marini's LTD benefits and deny her appeal was against the clear weight of the evidence.

77.  MetLife's decision to deny Ms. Marini's LTD benefits and deny her appeal was wrong, arbitrary, and capricious.

78.  Upon information and belief, MetLife was responsible for paying Ms. Marini's LTD benefits.

79.  Upon information and belief, MetLife had a financial conflict of interest serving as (a) the fiduciary to determine plan beneficiaries' entitlement to benefits, and (b) the entity responsible for paying such benefits from its own assets.

80.  Upon information and belief, MetLife had a financial incentive to deny Plaintiff's Plan benefits.

81.   Upon information and belief, MetLife's wrongful conduct during the administration of Ms. Marini's LTD claim was the result of MetLife's conflict of interest.

82.   Upon information and belief, MetLife's decision to deny Plaintiff's LTD benefits was the result of MetLife's conflict of interest.

83.   Upon information and belief, the opinion of William Baumgartl, M.D. was influenced by MetLife's conflict of interest, as well as his own conflict of interest and his desire for repeat business from MetLife and/or Genex.

84.   Upon information and belief, the opinion of Brandon Eros, M.D. was influenced by MetLife's conflict of interest, as well as his own conflict of interest and his desire for repeat business from MetLife and/or Genex.

85.   MetLife's decision to deny Ms. Marini's benefits was wrong, arbitrary and capricious, and an abuse of any discretion that MetLife purports to have reserved under the Plan.

86.   Pursuant to R.I.G.L. § 27-18-79, MetLife has no discretion under the Plan, therefore, the Court's review of Plaintiff's claim is *de novo*.

87.   Based on the evidence submitted to MetLife or otherwise available to MetLife, establishing that Plaintiff has met the Plan conditions for entitlement to benefits continuously since June 30, 2018, and that she at all relevant times continued to meet said conditions, Plaintiff is entitled to payment of all Plan LTD benefits owed to her plus interest on all improperly withheld payments.

## COUNT I
### (Enforcement of Plaintiff's Rights Under the Plan – ERISA 29 U.S.C. §1132(a)(1)(B))

88.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

89.    Plaintiff is entitled to enforcement of all of her rights under the Plan, including but not

limited to, payment of all past and present monthly disability insurance benefits.

90.    Plaintiff is entitled to interest on all overdue payments.

## COUNT II
### (Breach of Fiduciary Duty Under the Plan
### – ERISA 29 U.S.C. §1104)

91.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

92.    To the detriment of Plaintiff, MetLife failed to discharge its duties with respect to the

Plan solely in the interest of the participants and beneficiaries and for the exclusive

purpose of providing benefits to participants and their beneficiaries and defraying

reasonable expenses of administering the plan.

93.    To the detriment of Plaintiff, MetLife failed to discharge its duties with respect to the

Plan solely in the interest of participants and beneficiaries and with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims.

## COUNT III
### (Clarification of Plaintiff's Rights to Future Benefits Under the Terms of the Plan
### – ERISA 29 U.S.C. §1132(a)(1)(B))

94.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

95.    Pursuant to 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to clarification of her rights to

future benefits under the terms of the Plan.

96.    Plaintiff seeks a declaration that she has been continuously disabled under the terms of

the Plan from June 30, 2018 to the present, and that she is entitled to any and all benefits

wrongfully withheld for said period.

97.     Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongly withheld from her under the Plan.

<u>COUNT IV</u>
**(Declaration of Plaintiff's Rights Under the Plan – 28 U.S.C. §2201)**

98.     Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

99.     Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 and Plaintiff is entitled to a declaratory judgment establishing her rights under the Plan.

100.    Plaintiff seeks a declaration that she has been continuously disabled under the terms of the Plan from June 30, 2018 through the present, and that she is entitled to any and all benefits wrongfully withheld under the Plan for said period.

101.    Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongfully withheld from her under the Plan.


WHEREFORE, Plaintiff prays for the following relief:

A.     That the Court enter judgment in Plaintiff's favor and against MetLife and that the Court order MetLife to pay LTD income benefits to Plaintiff in the amount equal to the contractual amount of benefits to which Plaintiff is entitled.

B.     That the Court order MetLife to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment.

C.     That the Court order MetLife to continue paying Plaintiff benefits until such time as Plaintiff meets the policy conditions for discontinuance of benefits.

D.     That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g).

E.      That the Court enter declaratory judgment clarifying and establishing Plaintiff's rights under the Plan.

F.      For such other legal or equitable relief as this Court deems just and proper, as well as the costs of suit.

The Plaintiff hereby designates J. Scott. Kilpatrick as Trial Counsel in this matter.

Plaintiff, by her attorneys,

/s/ J. Scott Kilpatrick
J. Scott Kilpatrick, Esq. (#4036)
jskilpatrick@cck-law.com
Mason J. Waring, Esq. (#7737)
mwaring@cck-law.com
Leah Small, Esq. (#9701)
lsmall@cck-law.com
Chisholm Chisholm & Kilpatrick LTD
321 S Main St #200
Providence, RI 02903
(401) 331-6300 Telephone
(401) 421-3185 Facsimile